The next matter, number 241671, United States Fire Insurance Company et al. versus Peterson's Oil Service, Incorporated et al. At this time, would counsel for the appellants please introduce yourself on the record to begin. Good afternoon, your honors. Kristen Gallagher, Kennedys, on behalf of United States Fire Insurance Company and the North River Insurance Company. I'd like to reserve three minutes for rebuttal if I can. You may. Thank you very much. I think for the first time in 30 years of practice, I'm going to start as the appellant by complimenting the district court. The district court's opinion was extremely thorough with respect to the legal standards in interpreting insurance policies and the duty to defend. And when a carrier may be alleviated of that duty to defend. Specifically, the district court pointed out the duty to defend in the first instance is determined by comparing the allegations of the complaint to the policy. That if an insurer wishes to contest its duty to defend once it accepts, and she acknowledged that we've been defending Peterson's Oil since 2019, that the appropriate course is to bring an action for declaratory judgment, which we did here. And once that happens, the insurer can use information gleaned through discovery in the underlying action to bring an undisputed fact before the court that brings the case outside of coverage. So, with respect to whether or not there was an occurrence under the general liability policies issued by my clients, Judge Casper correctly pointed out that it was undisputed that Peterson's decision to purposefully blend biodiesel with the fuel that it entered into contracts with its clients to deliver was a volitional act and that it lied to its customers regarding the contents of the heating oil. Where we diverge and we feel that there are two slight mistakes in the court's reasoning in applying these legal standards that she so accurately set out is that with respect to whether or not there was an occurrence under the policy, the court correctly noted that some harm has to be demonstrated. So, Peterson's Oil had to have been substantially certain that some harm would come about. And that's well settled Massachusetts law. However, the court focused on whether or not Peterson's Oil anticipated and was substantially certain to damage the customer's heating systems. Now, the underlying complaint, the fifth amended complaint before your honors, is replete with allegations that Peterson's Oil absolutely knew. The section is mostly after these policies were done, 2018, that whole section. Interestingly, your honor, if that's the case, then we don't belong in this case at all because it was all after our policies. No, they were doing it, but then the question is did they know at that time that it would harm the property in the way that the complaint certainly sets out, at least more strongly. That they knew from 20, I'm going to say 2018 forward. Correct. That's correct, your honor. And that's where we have a divergence from what the standard is. The court focused on when did Peterson's start to know that the heating systems were damaged. But the fact that Peterson's from the beginning entered into contracts with its customers to provide number two heating oil, but didn't and they knew that they weren't from day one, that's harm. It's property damage, right? This thing covers property damage, right? This insurance policy, right? The insurance policy covers property damage if there is an occurrence. An occurrence is defined as an accident. So what you just told me, as I hear you, just tell me if I'm not hearing you right, is this ends because they intentionally breached a contract or a promise which was to provide a certain kind of heating oil. And that's enough. Once we say that, we're done. Not quite. Almost. What I'm saying is that Massachusetts law requires there to be some harm. And Peterson's oil absolutely knew that some harm would occur. Does the knowledge part go to that harm or is it enough that I know I have breached my promise? And then whatever happens, happens. And that's no longer an accident because I did the original thing, which is blending intentionally. You're saying in that then it does cause a harm. I didn't need either to know anything about like what would happen based on my action. Is that your position? If Peterson's oil made the purposeful decision to do something different than it contracted to do, that's not an accident. That is a foreseeable circumstance that that they made the business decision to do. That's not an accident. There's no fortuity there. And under Massachusetts law, did they know that there was going to be some harm? Right. And so the district court focused on did they know that ultimately there were going to be complaints about damage to the heating system? OK, yeah. I mean, the underlying complaint is, again, replete with they knew there's no way they couldn't have known. But what they did know and that there was harm is because they lied to their customers. They didn't deliver on their contracts. It's a straightforward law under Smart Foods, Utica Mutual. Smart Foods, I am selling popcorn to these people and I am just going to stop selling popcorn to them. And I thought the idea of that was obviously if I promised them cheesy popcorn and they don't have cheesy popcorn, they can't sell it. That's a. Harm of the 7-Eleven not being able to sell the cheesy popcorn is going to happen. What this seems a little different to me is I, Peterson's, will benefit from blending the oil for whatever reason. Let's just say it makes it cheaper for me. And I don't really know whether it's going to harm anybody's heating system or not. Maybe it will. Maybe it won't. I'm kind of agnostic to that. I hope it doesn't. But I'm just going to take this business advantage that I can. And it's not as clear to me what will happen as it is when I'm not going to sell cheesy popcorn to 7-Eleven. And that seemed to me to be a potential difference. No, Your Honor, this is very different because. And I'll point to the fifth minute complaint. In the negligence count, paragraph 254, the class members were damaged by receiving a product worth less than the number two fuel oil that they paid for. So imagine this. My daughter's graduating from high school tomorrow. I greatly appreciate moving us from yesterday to today. I buy her a watch. I buy it online because I'm very busy coming to lovely Boston, etc. Let's say that I buy that watch online, pay for it. And then when I get it, it looks like the watch that I bought, but it's refurbished and it's not worth as much as I paid for. That's harm. That's some harm. And going to the case law, it's very much like Pacific Indemnity versus, I think it's Lambo. Where the court found, Massachusetts Supreme Court found that a contractor was operating under a scope of work to cut down trees, cut down more trees than it was supposed to or different trees than it was supposed to. That's a foreseeable circumstance. That's a business risk that they should have followed the contract that they entered into, but didn't. That's not an accident. That's not the reason. All are substantially certain. If I want my oak tree cut down and you cut down my maple tree, that's clearly going to upset me. But here, if there's no allegation or proof that they know of this harm, I understand there's a harm that I contracted for a certain type of oil, but I got another. And I guess what you're telling me is that's enough. That's a harm. I, Peterson, know you contracted for 100% oil and you're getting something else. That's a harm and that's where your duty to defend stops, even though this harm that's at the centerpiece here about the damage to the property, maybe they knew it, maybe they didn't. But we don't care about that. You don't have to know with precise certainty what the ultimate harm is. Now, let's be clear. The entire underlying case, discovery is over. It's going to trial in October. There is nothing accidental about this. Liability insurance is supposed to insure for risks of the unknown, not decisions that I make now and I want to protect myself later by purchasing this insurance when I know what I'm doing could potentially cause some harm. I'm lying to my customers. Judge Casper said that in her decision. I followed that. That seemed very clear to me. The Petersons knew they were blending the oil in violation of the contract. And I guess what I'm pressing on is if that's enough, I think you win. I guess I'm pressing on whether that's enough. That's enough under Massachusetts law. Obviously, the entire Fifth Amendment complaint all goes to clearly there was harm. They're alleging fraud, misconduct, etc. It's replete with and the allegations against the carriers, etc. Because there are three separate actions that they're replete with. This was fraudulent. It was just it was all over the news here, right? It was fraudulent. It was meant to deceive. How is that an occurrence? How is that an accident? And yes, that's all you need. They knew they were breaching the contract. But if I could just move on. I have a couple of questions. If I might. What's your understanding as to what is live as to the duty to defend in the district court? I'm sorry. Just what is your understanding as to what is live as to the duty to defend in the district court now? Oh, what is live? Well, we're still defending Peterson's oil. And so we will continue to defend that unless the court relieves us like we asked for in the. We're going to hear a jurisdictional argument. Do you think you've been enjoying to continue to defend at this point? Yes, I do. But in the first place, the district court, after deciding in her June decision. Decided all pending issues, duty to defend the failure to supply endorsements and said that the duty to indemnify was not right, which all the parties agreed on and dismissed our complaint. Her indicative really says, though, that's not how she meant to describe it after we filed the appeal. I mean, we don't have a final order here, right? I respectfully disagree, Your Honor. I think it is a final order because there is nothing left. The court required us to continue to defend Peterson's oil, which we are doing. She said we must continue to defend. Does the district court have to dispose or somehow handle the counts that have not been dismissed? The complaint was dismissed in its entirety. There is no complaint pending. We're potentially going to have to refile a complaint on the duty to indemnify. I thought there were counts remaining. I'm sorry? I thought there were counts remaining. No, Your Honor. The complaint was dismissed. She has given indicative rulings, I guess, on discovery motions, and she is requiring you to file status reports that you're filing. Well, her indicative ruling was based upon the federated case, which is before you tomorrow, Your Honor. And so I'm not sure why there were these clarifications. Maybe I'm confusing them. Are you filing status reports in this case? We filed a status report simply saying that the appeal is still pending. And she's ordered you to file status reports about the state litigation? I believe that she did in conjunction with the federated case that she wants to continue to be apprised of. What do you think your strongest basis for jurisdiction is? Well, that she dismissed our complaint, that she compelled us to defend, that... That's all of them. Which one do you think is the best one? What do you think is the most straightforward? I mean, I guess... All pending issues before her were decided. Okay. And she dismissed our complaint. But with respect to the federated case, we also have the collateral case doctrine because... Sorry. Because federated case is before you tomorrow. And if federated case is heard with some of the overlapping issues that are here, we could be precluded from ever having our appeal heard. I don't want to let time elapse too much, but I want to make sure Judge Lopez has time for a question. Thank you. Yes, I'm afraid I do. The premise of my question is I'm trying to... I mean, you acknowledge that you've been defending for a number of years. The law allows you to discover facts during the pretrial process that you think takes this claim outside of the policy coverage. You can seek a declaratory judgment. That's what you've done here. The law allows you to do that. What I'm trying to figure out is what did you learn during discovery that, in your view, entitles you to now no longer have to defend? And I say that because... I'll read quickly to you what Judge Casper says, and I like your response to it. She says, the plaintiff urged the district court to disregard the negligent count as inconsistent with the facts before the court. The undisputed evidence that the Peterson defendants knew that they were blending biodiesel fuel does not necessarily mean that the Peterson defendants knew of the risks to consumers. Interveners may well prevail on their negligence claim because the Peterson defendants should have known of an unreasonable risk while failing to prove that the Peterson defendants breached the terms of their contract with interveners or had the requisites for fraud. What I understand Judge Casper be saying, the only thing you now know for sure is, through discovery, is that, yes, Peterson made an intentional decision to dilute the number two oil with this biodiesel fuel. That was an intentional act, but just because that was intentional doesn't answer the question whether, in doing that, they should have known of the risk to consumers. That is, in essence, the negligence claim, and that will be resolved at trial. I'm puzzled by what is it that you learned through discovery that you now think gets you out of the duty to defend? Your Honor, that's exactly what I meant by the fact that Judge Casper got the standards correct. In the first instance, comparing the allegations of the complaint to the policy is how you determine a duty to defend. We did the right thing. There's another carrier that didn't. We stepped in and defended. We learned through discovery, and by the way, we filed the DJ action after Mr. Peterson testified that he did this intentionally. Judge Casper says that doesn't matter. That doesn't resolve the negligence claim. That degree of intentionality doesn't preclude the possibility that there was an accident here in the sense that harm that they did not anticipate occurred or something that perhaps they should have anticipated happened, but they didn't. That would be a negligence claim, and you haven't told us, I don't think. What did you learn in discovery that takes the negligence claim out of the case? That's what I don't understand. I understand your question, I think, Your Honor. There is a negligence claim in the underlying complaint, the Fifth Amended complaint. However, it is based on the same facts as all of the other counts, which we didn't know until discovery concluded. After discovery concluded, we now know that everything that Petersons did was intentional in nature, and the County of Barnstable case and Freeluxury Homes. Everything I do is intentional. I threw the ball, and it hit you. I intentionally threw the ball, but was it reckless that it hit you? Was it negligent that it hit you? Or did I try to hit you between the eyes because I know I can, and I'm going to knock you out with it? This is a bodily injury case, Your Honor, and I think it's very different. You're still saying just because you did the first step, which is you engaged in something wrongful, that's the end of the analysis as opposed to an understanding or intentionally doing the harm that you want. All you're saying is once we prove you did the wrongful thing, the analysis stops. We don't care what knowledge you had towards the outcome because it was wrongful to blend the fuel. End of story. They lied to their customers, and that's what we discovered, but let's face it. We're going to trial in a couple months. We've been defending for years, and so the other piece of this is actually applying the failure to adequately supply endorsements, which would require us to continue to defend, but when properly applied, which we would. We would continue to defend, but the coverage would be limited, which is exactly what those endorsements say. Even if the court finds that the intentional breach of contract and providing fuel that was very different and worth less than what the customers purchased. Okay, so we continue to defend, and we have been, and we can't get that money back, but we should be able to limit our coverage because that's exactly what the policy says. And that's what policy interpretation law is in Massachusetts, is you have to apply every word and give meaning to every word. Your time is up. You do have time in rebuttal. Okay. Thank you, Your Honor. Thanks, counsel. At this time, would counsel for Peterson Appalese please introduce himself on the record? Good afternoon, Your Honor. Lou Savara for the Appalese Peterson Oil Company and the family members, Howard, Kristen, and Sharon. My counsel for the other Appalese, Attorney Strom and I have agreed and informed the clerk that I'll use eight minutes and he'll reserve seven minutes. How we split up our time. But my hope is I won't even need that. It's been a long morning for the court. And I think our briefs frankly address almost all the questions and issues that have been raised here today. But perhaps I can make a couple quick points and obviously answer any questions you might have. First on this issue of jurisdiction, I don't know if it's good, bad, or indifferent, but I don't think the court has jurisdiction at this time yet. It's pretty important. I know it is and we're here. And I know the court has the discretion to still consider the merits if it chooses to. But putting that aside for a second, just dealing with some of the questions. I understand what you're saying. I don't want to run out of time unless the other guy is going to answer. Thank you. Let me just get to the point. The case is not dismissed, number one. The case exists. It's on the docket. It's not dismissed. Judge Casper has ordered us regularly to continue to give her reports, number one. Number two is Judge Casper doesn't... There's no judgment. If I go there, there's no judgment. She actually, they were asked to enter judgment and she refused. One, there was a question about is the case dismissed. It is not. It is not an accurate statement. The case is on the docket. It exists. We continue to report to it. Judge Casper considers it in existence. If you read her indicative order of January of 2025, not only does she say the case continues and that she's ordering reporting, she goes on to say that even if this court were to remand, she would stay the case until the underlying trial is resolved. She has a case. She's managing her case. There is no final decision on any issue. All that happened below was a motion for summary judgment was denied. It happens in cases all the time that don't end up here. The insurance company brought a motion to summary judgment to seek a declaration that they did not have coverage. The court rejected that. She does write, however, back to the second argument. Plaintiffs must continue to defend the Peters defendants in the underlying litigation. Two points on that. One is we did not file a cross motion or seek any type of order compelling them to continue to pay our defense costs. If they stopped, we would not have a contempt proceeding. Why not? Because there's no court order requiring them. Why is that not it? Because what she was stating is the law. The law is once an insurance company begins to pay defense costs, it can't get out unless it files a D.J. action and get an order allowing them out. She was just stating, frankly, the obvious. We didn't seek an order. We didn't ask for an order. We do not believe for a second that that's an injunction against her, nor would we ever bring a claim seeking to enforce that based on her quote order. It's dicta. It's additional language. There was no remedy. There was no motion. There was no request by us to order anyone to do that. We don't think it's appealable based upon the statute in dealing with injunctive relief. So we don't think there's jurisdiction here. But again, we briefed all that in our papers. And absent any questions, I'll move on to the merits of the underlying dispute. Can I just ask you neither? And I used to do what you do, so I hate it when a judge does this. But neither of you cited to W.M. Kapp Partners versus Barrera Russ, which is a 2020 decision dealing with jurisdiction under 1291. And I'm wondering why. And if you can't answer it, it's OK, or we could we can do it later in a 28 J. But it seems to deal with an appeal of a summary judgment decision in a declaratory judgment action. That's not accompanied by a final order. I missed it. OK, OK. If the court would like, we can supplement it with a letter. We'll take one thing I know for sure. You want to get to the merits. Go read it. I think it helps your argument, but I apologize. Well, then I'll definitely read it. If I could just deal to this issue about what happened here. This issue about somehow on this record that you say that the result of what they're asking you to do, frankly, would preclude any type of a negligence action below. They're essentially saying to this court that the only claim we have and the only claim or the only claim that the plaintiff's had, the only claim that we have exposure on is some claim relating to intentional misconduct with a knowing harm to result from that. That's not the only case I represent Peterson Oil below. I'll be trying the case in the BLS in October. I've got to defend a negligence claim. There will be a claim that I will have to defend that my client is the same in any design defect case, put a composition of a product together and sold it to its customers. Our position in the evidence and the evidence before the district court, believing it was equivalent to any other product his company had sold for 70 years. If you think about it for a second, he's got 10,000 customers who buy oil certainly during the winter every single month. It's ludicrous to suggest he's going to put in a marketplace a product he knows is going to cause somebody harm and he denied it. It's in the record. It's in his deposition. He says it's enough to say I promised you this kind of oil. I gave you that kind of oil. That kind of oil is worth less than this kind of oil. That's the end. Whatever happens downstream from that, forget about it. Our huge event ended right there once it's clear as day that you broke that promise to sell me this kind of oil. Here's where it fails. One of the first things my sister mentioned was these facts upon which they can deny coverage, extraneous evidence, is for undisputed facts. I can guarantee you that in the underlying case and in the legal right, if this case was only pled by the plaintiffs as a breach of contract claim or if it was only pled as a fraud claim, that might be the end of the conversation, but they have pled a negligence claim as we know. It doesn't require intent. It doesn't require any knowledge. The fact that we may or may not have sold a product that is number two fuel oil, home heating oil, would not support a claim of negligence. These are just two different elements, two different paths to success by the plaintiffs, two different paths of exposure to the defendants. But if you just deal with the factual issues, I think it really is the key answer to it. It's not undisputed. The evidence below and the evidence in front of the district court is that it's the same thing. There's no difference. It is simply untrue and is disputed now in this disputed underlying case that the fuel that was sold, currently in New England, every state other than Massachusetts requires blending of biofuel. Massachusetts incentivizes it financially for people to provide fuel in addition at 10%. There's nothing wrong with blending oil. In fact, every gallon that comes on Newport is already pre-blended. There's nothing wrong with it. It's not selling a Rolex and sending them a Timex. This is not the same thing. It is not an undisputed fact that Peterson Oil sold people something different or that they lied to them or they misrepresented something. It is hotly and will be forever disputed. We will know, presumably after the jury comes back in October, whether it was determined they did or they didn't. This summary judgment was denied because all of these facts that would lead to whether there's a duty to indemnify, to lead to whether there's a duty to defend, are unresolved. They are disputed and they can't be resolved in the insurance company's favor. My time is up, but I don't know if you want me to deal also with the failure to supply language. I think your colleague wants to argue, though. Judge Lopez, do you have any questions? This may be more an observation than a question, but you're welcome to respond to it, counsel. Again, speaking only for myself, I think this jurisdictional question is really much ado about nothing. The insurers come to court. They've been defending for years. They now think they should be relieved of that obligation. They file a declaratory judgment seeking summary judgment to that effect. Summary judgment is denied. Now, you're quite right. Usually a denial of summary judgment is not a basis for appeal. But this is an unusual situation because the denial of summary judgment means they have to do something. They have to continue to defend. The relief that they sought has been denied to them. Finally, they've acknowledged as the case now stands, they're going to continue to defend. That's not what they wanted. So with respect to that issue, the duty to defend, we have a final decision here. You may not call it a judgment. Judge Casper thinks that there's still a lot to be decided on the indemnification issue. That's certainly true, but that doesn't affect at all the finality as it stands now that they have got to defend. I don't understand why we don't have jurisdiction. That's the issue here. Right now, the insurer has got to defend. I guess, I don't know if you are looking for a response to that, but my response to that is simply... I mean, I understand your point, but I will try to respond to it. It is one aspect of the case that they filed. It is different than a partial motion for summary judgment and trying to resolve a negligence claim when you have multiple legal theories. You don't get to appeal it piecemeal. What happens after this case goes to trial? It goes very terribly for you. Everything goes the way they say it is in the world. Is that it? They can't recover anything? They had to pay for it and it's over? No, no. My understanding, and I've never had to litigate this, my understanding is they absolutely can try to recover the attorney's fees they paid based upon a pure contract claim. They provided somebody a benefit that wasn't earned. It's an unjust enrichment claim. Do you anticipate when this October trial is over, there will be more litigation in this case about the duty to defend? No, I don't, because I don't think there is an issue over coverage. But if you are wrong, and they are right about everything, and you lose in Massachusetts State Court really terribly, I know you don't want that, but just assume it for my question, Judge Casper has denied summary judgment as of this point. Does anything else happen in this case in the federal district court before Judge Casper about the duty to defend? The answer I think is yes. I think Judge Casper would have to come back and decide, depending on what happened at the jury trial, whether or not the eventual claim and the eventual success relates to and shows that Peterson Oil knew or was substantially certain that that harm was going to happen. That's a factual dispute that's not been resolved. So I do think there's more to do on the Lyon case, which is why, again, summary judgment was inappropriate. Thank you. Thank you very much. Thank you, counsel. At this time, would counsel for the appellees, Marendino et al., please introduce themselves on the record to begin? Good afternoon, Your Honor. Jeff Strom for the appellees, the claimants below. Thank you for allowing Attorney Ciavar and I to split our time. I would like to quickly address a couple of the issues you were discussing with Attorney Ciavar and Attorney Gallagher. And in particular, this issue of whether or not the mere fact that there was a breach of contract ends the inquiry and they breached their contract. Therefore, they must have known there was going to be harm. As an initial matter, the Supreme Judicial Court has made clear that it's not just a question of whether or not they know there's going to be some harm. The question is whether or not they know there will be the type of harm that is the subject of the insurance dispute. Here, the subject of the insurance dispute is whether or not the property damage is covered. And so even if they did have some awareness that they were breaching their contract. And by the way, we don't allege that they were aware they were breaching the contract. And there hasn't been an undisputed fact put before the court saying they were aware they were breaching their contract. In fact, the testimony… I agree with your argument because that's the argument I'm interested in. So assume they breached the contract, follow that through, you say what? If you assume they breached the contract, the City of Newton v. Cransignor case that they cited in the footnote towards the end of that case, the SJC says they have to anticipate the type of harm, not just that some harm will occur. And so if you assume that they breached the contract, you would assume that they anticipated… One minute, I just want to make sure Judge Lopez is still here. Of course. Oh, there you are. Sorry, Judge Lopez, the TV screen turned off for a minute. Okay, thank you. Thanks for checking. Sorry to interrupt. No problem at all. If you assume that they knew they were breaching the contract, and again, there's no evidence of that, and that they knew they were delivering a product worth less, that's a different type of damage than what we're talking about now. There's no evidence. There's nothing in the complaint that shows they knew that their product was going to cause the property damage that is at heart of this coverage dispute. The law is also exceedingly clear that the fact that we have these contract claims, and we have 93 claims, does not change the fact that if we have set forth a colorable negligence claim, there's coverage. We've cited a case in our brief. I'm not going to get the name right. I believe it's Fred Ticot. But it's a woman accused her employer, her boss, of unfortunately raping her, sexually assaulting her intentionally. And the court, nevertheless, found that those same allegations could support a claim for sexual harassment, and therefore, the claims were covered. And so that's a far more example of intentional conduct, far more extreme example of intentional conduct than we have here. And so where we have the negligence count… What makes Smart Foods different. That's the case they rely on. What makes Smart Foods a different… There's one critical difference. There's no negligence claim there, for one thing. And I've talked about that the harm there was, the intangible harm was substantially certain to occur. What harm are they talking about in that case? So in that case, as I believe you articulated earlier, in that case, the distributors had signed up to distribute Smart Foods. And they had invested in, I believe, trucks, they invested in shelves in stores, and planning on continuing to distribute Smart Foods popcorn. And then Smart Foods says, no, we're done. You're not going to continue to distribute Smart Foods popcorn. And so the court there was saying, of course, in that scenario, where the Smart Foods knew they were relying on them and investing in these improvements in reliance on them, of course, they should have anticipated some harm. You would say Peterson didn't know that mixing the fuel would harm the equipment. Absolutely, they did not know that mixing the fuel would harm the equipment. And even when you look at the things we have alleged there, what we have actually alleged is that there were risks. There were risks of harm to equipment. There was risks that it was going to corrode fuel lines. There were risks that it was going to gel and cause heating equipment to shut down. And we do allege that Peterson knew or should have known of those risks, but that's the negligence standard. And at worst, the other thing they point to that we've alleged is that at some point they did become aware of some shutdowns. But even in that case, even if you were to take a step and say it's a heightened risk, that's just a recklessness standard. And the law is extremely clear here that recklessness is not enough. The SJC has said it multiple times. So however you frame the inquiry, they simply have not shown that the complaint takes it out of coverage. I would also point out in this regard that the timing is critically important. The policy covers occurrences that happen within the policy period, and the policy period was 2012 to 2016. And so we have to be looking at whether or not there was accidental conduct between 2012 and 2016. All of our allegations with respect to their knowledge of risk focus on things that came out after July 2016 when their coverage ended. We cite to a November 2016 publication by the Department of Energy talking about things that had become known from biodiesel. So there's no evidence whatsoever that they even knew about any of these problems during the coverage period, such that it could take it out of the traditional definition of accidental. If I could just review my notes, I don't know if you all have any questions in the meantime. Nothing, thank you. I guess I would comment on the jurisdictional issue that we do agree with Judge Lopez that we share Peter Sanoa's concern and belief that a final judgment has not entered, and that there are, Judge Montecava, we agree with you that there are counts that were not decided finally. However, at this point, we've all briefed the issues. You've now heard a lot of argument on the issues, and so our position is respectfully, we would request that you exercise your discretion to hear the appeal on the merits, even though a final judgment has not entered. Thank you. Thank you, Your Honors. Thanks, Counsel. At this time, would Counsel for the appellants please reintroduce herself on the record? She has a three-minute rebuttal. I didn't want to interrupt you. Kristen Gallagher from Kennedy's on behalf of Appellants U.S. Fire and North Ripper Insurance Company. Really briefly, before I respond to a couple of the points that my esteemed co-counsel have made, I do want to go back to the fact that even if the court does not think that breaching, specifically and purposefully breaching your contracts with your customers could be considered an accident, and I would just ask that Your Honors read the complaint, because it is replete with evidence that they knew that they were doing that back during our policy period, which is why we're here. But even if there's an occurrence, the policies each contain a failure to adequately supply endorsement, which means that we would continue to defend, but there's a limit on coverage in each policy period. What I meant there, because we really haven't talked about this, is that adequately has two meanings, and we must have meant both when we used it. And why is that the way the law works? As opposed to, you use the word adequately, it has two meanings, and we don't know whether you meant meaning one, meaning two, or both. And therefore it's ambiguous. Understood. We wouldn't have used it at all. All we would have to say is failure to supply. And all of their other policies with other carriers have that language. They're broader. Our policy says failure to adequately supply. So the way that they're asking for you to read... Failure to supply being an absolute failure to supply any oil whatsoever, that would be failure to supply. This gets to failure to supply maybe enough in quantity, maybe of the right quality, but the adequately is an adverb, somehow, or modifying supply. And then the question is, well, what does it mean? And I think plausibly it could mean two things. It does, because every dictionary definition that we cited, which Judge Casper acknowledged... Here's another example. That is a handsome basket of apples. I could mean that's a good-looking basket of apples, or I could mean there are a lot of apples in the basket, like it's a handsome salary. There's a lot of apples there, because it also has a quantity meaning. What do I mean? Well, you don't really know, do you? I might mean both. It's both a large apple and a good-looking basket. Or I might just mean one of those two things. That seems to be like the definition of ambiguity. And it's the same thing. What do we mean? Amount? Quality? Why is being both ambiguous? You might have meant both. You might have meant both. But how do I know you meant both? Well, actually, I do know we meant both. How does someone reading those words know you meant both? The insurance law in Massachusetts requires you to give meaning to every word. And it is perfectly acceptable to mean both. Again, we don't insure business risks. So if Peterson's Oil doesn't supply the right oil, the right kind of oil, or enough oil, it's very clear. And to read otherwise is reading it out of the contract. We all want to go to lunch, but I still have one more question. What will happen at the end of this trial in Massachusetts State Court as it pertains to the duty to defend in this court, assuming that the oil company loses terribly and it goes exactly as they've known forever, that this would harm the equipment? That's the evidence. What happens next before Judge Casper, if anything? We would then, and by the way, the record does reflect that our complaint was dismissed. We would have to go back and refile a complaint on duty to indemnify, and then we would be arguing whether or not the actual damages that were awarded to plaintiffs fall within the scope of coverage. My esteemed brother, who represents... It would be over. There's nothing more to defend. You can't recoup the funds. Absolutely not. And that's why this is injunctive. We're still paying for this defense, and after it's all over, we can't come back and say... I mean, if the district court, and perhaps you say, you have a continuing duty to defend, how is it that we go argue that again? We can't. It has an injunctive effect. The duty to defend then is over. After the trial, we're done. Then we're talking about what damages are indemnifiable, and that's... Right. There's nothing else about duty to defend, and we can't collect that. We're done. Judge Lopez, do you have any questions? No. I'm all set. Thank you. Thank you, Your Honors. That concludes argument in this case. All rise.